[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff corporation (HRH) is an insurance brokerage doing business in the state of Connecticut. In that capacity HRH secured business insurance for the defendant (MM). MM was in the business of distributing petroleum products. The complaint alleges that MM owes the plaintiff $4711 for unpaid insurance premiums.
The business relationship between the parties began in approximately 1992. At that time HRH placed insurance coverage for MM with the Fireman's Fund Insurance Company (FF). FF utilized a direct billing method for payment of the premiums. That is, they billed the insured (MM) directly. It was FF's policy to send cancellation notices to the insured if premiums were not paid on time, and the third such notice would be a final one with the coverage then being discontinued.
In 1999, in accordance with that company policy, FF sent MM a third and final notice of cancellation. That event necessitated HRH obtaining new coverage for MM and it did so with the Great American Insurance Company (Great American). Great American used an "agency billing" procedure for its billing. In agency billing, the agent or broker paid the premium and would, in turn, bill its client, the insured. But the brokerage would be liable for paying the premium whether or not it was reimbursed by its client.
The plaintiff presented credible evidence through its executive vice-president Anthony W. Newman and its account manager, Susan Caron, that, as of March 22, 2000, there was a balance owing to HRH in the amount of $4711. The testimony was corroborated by the statements of account, the accuracy of which was not refuted. The plaintiff's records were detailed and coupled with the testimony offered, persuade the Court that the plaintiff has established by a fair preponderance of the evidence, the validity of its claim.
Charles Minicucci. the owner of MM testified that he recalled CT Page 15353 getting cancellation notices but was not billed directly by FF and that he believed his FF account was paid up. While he disputed the amount he owed to FF, there was little in the way of specifics to substantiate his claim.
The bookkeeper for MM, who also testified, really could not refute the plaintiffs records. She cut checks for the business as directed by Mr. Minicucci, but did not refute the plaintiff's accounting.
In short, the plaintiff has established it is owed $4711 for premiums HRH paid to Great American on behalf of the defendant. While MM had a disagreement with FF over the premium FF was claiming, its claim that HRH wrongfully applied several checks to the FF account is not persuasive. Although on a direct billing program with FF, MM did not send those checks to HRH pursuant to any invoice for the Great American Account, but, as sometimes happened, they were either made out to FF and endorsed over to FF by HRH, or were sent to HRH as payment for an FF billing, in which case HRH deposited them and then made a disbursement to FF. Apparently there were four or five such checks. The claim in this case has to do with unpaid premiums for insurance premiums advanced by HRH on behalf of MM, to Great American only.
The defendant orally withdrew its counterclaim. Although it was not pursued, the Court does not believe the counterclaim was made with an improper intent, but was made in good faith, albeit based on inaccurate information. The plaintiffs request for counsel fees to respond to the counterclaim is denied.
The Court declines to award prejudgment interest under the facts of this case. It concludes the defendant had an honest belief that his bills were current. He had been a client of the plaintiff for many years and the amount in dispute is a fraction of the premiums he paid over the years. Also, it was not an easy task to keep track of the various billings for the several types of insurance and policies being brokered by the plaintiff.
Judgment shall enter for the plaintiff in the amount of $4711 plus costs. CT Page 15354